**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMARR TOWERS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 20 C 2653 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| TEAM CAR CARE, LLC, TEAM CAR ) | |
| CARE WEST, LLC., ) | |
| ) | |
| *Defendants.* ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamarr Towers ("Towers") brings this lawsuit against his former employer, Team Car Care LLC and Team Car Care West, LLC ("Defendants"), alleging Defendants failed to remedy or prevent the sexual harassment of Towers by a coworker and later terminated Towers in retaliation for filing a sexual harassment claim, in violation of Title VII of the Civil Rights Act of 1956 ("Title VII") 42 U.S.C. 2000e, *et seq.* (Dkt. 1). Before the Court is Defendants' Motion for Summary Judgment on both counts pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motion [35] is granted.

Towers, who is proceeding *pro se* in this action, filed no response to Defendant's motion for summary judgment or statement of undisputed facts, nor did he submit any additional facts.[1]

---

[1] The Court set a briefing schedule for dispositive motions via teleconference that Towers participated in on June 14, 2021. The Court advised Towers on the record at that teleconference that his deadline to respond to Defendants' summary judgment motion would be August 23, 2021 and that helpful documents for responding to summary judgment motions could be found on the Court's website. Counsel for Defendants subsequently sent the order setting forth the briefing schedule to Towers via email. (Dkt. 39, Ex. 1). Defendant's Motion [35] was filed July 26, 2021. The next day, Towers e-mailed counsel for Defendants requesting a copy of the summary judgment motion, which counsel provided a OneDrive link. (Dkt. 39, Ex. 2). Counsel for Defendants also mailed a copy of the motion and related filings to Towers (*Id.*). Defendants did not provide Towers with the required Notice to Unrepresented Litigants Opposing Summary Judgment until September 1, over a week *after* Towers' response was due. *See* Local Rule 56.2; *see also* Dkt. 38. It is important that parties timely comply with Local Rules, particularly when it involves a *pro se* litigant. However, the communication with the Court and with Defendants reflects that Towers was aware that the

Federal Rule of Civil Procedure 56(e) allows that if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the Court may consider the facts undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2-3). Towers, by not responding to Defendants' motion, has failed to properly address Defendants' assertions of fact. Even as a *pro se* litigant, Towers has had ample time since receiving Defendants' Local Rule 56.2 Notice to Unrepresented Litigants and has not made any responsive pleading. *See Collins v. Illinois,* 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro* se litigants must follow procedural rules.") Therefore, the Court will consider the facts presented by Defendants as undisputed for the purposes of this motion as permitted by Federal Rule of Civil Procedure 56(e).

## BACKGROUND

Plaintiff Towers, a resident of Aurora, Illinois, is a former employee of Jiffy Lube Store 1100 located in Oakbrook Terrace, Illinois. (Dkt. 37, Defendant's Statement of Undisputed Material Facts ("SOF") at ¶¶ 1, 6, 8). Defendants are one of the nation's largest franchisees of Jiffy Lube, operating approximately 500 Jiffy Lube locations including Store 1100. (SOF ¶¶ 5-6).

Towers was hired as a Customer Service Advisor for Store 1100 on or around June 20, 2018. (*Id.* ¶ 9). He was advised of the open position by Mike Poppleton, the manager of Store 1100, who Towers met during a previous training with Jiffy Lube while working at the Glendale Heights Jiffy Lube location (*Id.* ¶ 8). A Customer Service Advisor was primarily responsible for

---

motion was filed. Following the Local Rule 56.2 Notice more than **five** months ago, Towers has made no effort to communicate with the Court or otherwise respond to the Motion for Summary Judgment.

greeting customers, going over the reviews of their vehicles with customers, dealing with payments, and walking customers to their vehicles. (*Id.* ¶ 10).

Defendants shared a number of documents with new employees upon hiring, including the Employee Handbook, the Code of Conduct, and the Harassment, Discrimination and Retaliation Policy. (SOF ¶ 11, SOF Ex. 8-11). The Teammate Handbook includes a Respect in the Workplace provision that states:

> Our company will not tolerate disrespectful or threatening treatment. Please see the anti-discrimination/anti-harassment policy, and the safety/workplace violence policy, for additional information. Disrespectful or abusive treatment includes, but is not limited to, repeated use of obscene, profane, or foul language; screaming or offensive gestures; the display or distribution of offensive materials; threats of violence, hitting or shoving; stalking or unwelcome phone calls; and the intentional destruction or defacement, or the threat of such destruction or defacement, of company or teammate property.

(SOF, Ex. 9). The policy also states that "[r]eports of violations of this policy will be promptly and thoroughly investigated" and that Defendants will "take action as needed to ensure that any improper conduct ceases, including, where appropriate, corrective action up to and including termination of employment." (*Id.*). Defendants also provide a Teammate Code of Conduct to its employees. The Code of Conduct contains provisions that teammates "will treat our guests, vendors, and teammates with civility and professionalism," that teammates will treat teammates and managers respectfully, avoid language that may be deemed "offensive, humiliating or discriminatory," and that teammates will work the hours scheduled. (SOF ¶ 15, SOF Ex. 10 at ¶¶ 3, 23, 26). The Harassment, Discrimination and Retaliation Policy includes language that:

> Harassment, discrimination and retaliation, either intentional or unintentional, of, or against any employee, teammate, third party, applicant, volunteer, contractor, or intern has no place in the work environment and will not be tolerated. Accordingly, the Company will not authorize and will not tolerate any form of harassment,

3

> discrimination or retaliation by employees, coworkers, supervisors, or managers (or third parties, vendors, visitors, clients, contractors, etc.). Prohibited conduct includes, but is not limited to, verbal, physical, visual, and/or derogatory comments based on protected characteristics including: race, color, national origin, mental and physical disability, legally protected medical condition or information, genetic information, family care status, military caregiver status, religion (including religious creed, dress, and grooming), ancestry, age, sexual orientation, gender/sex (including pregnancy, perceived pregnancy, childbirth, breastfeeding, or related medical conditions), gender identity and/or expression, marital or domestic partner status, military/veterans/reserve/national guard status, citizenship status, discharge status from the military and any other characteristic protected by federal, state and local laws.

(SOF ¶ 16, SOF Ex. 11 at 147). The Harassment, Discrimination and Retaliation Policy also states that upon receiving a complaint pursuant to the policy, the company will timely respond and conduct an impartial and timely investigation by qualified personnel. (SOF ¶ 18, SOF Ex. 11 at 150). Towers acknowledged receipt of each of the policies and handbooks using an online portal. (SOF ¶ 19, SOF Ex. 8).

In the fall of 2018, Towers told Mike Poppleton, the manager of Store 1100, that he had a complaint against a female coworker (also referred to as a "teammate") for sexual harassment. (SOF ¶¶ 20-22, *see also* Compl. ¶¶12-13). Towers claimed that over the course of several months, the female teammate had made unwanted advances towards him during work and sent him inappropriate text messages. (SOF ¶ 21). Poppleton notified Ray Perez, the District Manager (SOF ¶¶ 20-22, *see also* Compl. ¶¶12-13).

Perez subsequently conducted interviews of all Store 1100 teammates between September 29, 2018, and October 10, 2018, concerning Towers' sexual harassment claim. (SOF ¶ 23). Towers made an official complaint to Perez on October 15, 2018, who then advised the Defendants' human resources of the allegation. (¶ 25). On October 16, 2018, Rosibel Romero (Defendants' senior

4

human resources generalist) began an investigation into Towers' allegations against his teammate. (¶¶ 26, 33). The same day, Romero spoke with Towers. Romero spoke to the teammate accused of harassing Towers a few days later on or about October 21, 2018. (¶ 28). Through the investigation into Towers' complaint, Romero learned and was provided with proof that Towers was in a relationship with the teammate he had accused of harassment. (¶ 29). The teammate documented the relationship in a written statement and the statement was corroborated with several other Store 1100 employees. (¶¶ 30-31). Perez (the district manager) and Romero (human resources) concluded that Towers was in a consensual relationship with the teammate and that because the relationship was consensual it would not be investigated any further. (¶ 32). Defendants' investigation into Towers' complaint was extensive and included at least seven interviews. (¶ 33).

During the investigation, a pattern emerged suggesting Towers was negatively impacting his Store 1100 teammates. (¶ 34). Several teammates indicated that Towers routinely used coarse language and made several comments to the teammate he accused of sexual harassment. (¶ 35). One teammate also submitted a statement that Towers utilized his relationship with Poppleton, his manager, to his advantage including leaving Store 1100 with Poppleton on one occasion to go to Poppleton's son's football game without clocking out to account for his absence from the store. (¶¶ 36-38). Another teammate at Store 1100 submitted a statement that Towers would intimidate her and force her to buy him meals. (¶ 39). Towers forced this teammate to write another statement recanting her previous statement, and the recantation was notarized. (¶¶ 40-41). It was then discovered that the recantation was coerced and that Towers, not the teammate, had brought the statement to a notary public to have the statement notarized. (¶ 42). The same teammate contacted

Perez to report that she was coerced into writing the recantation and that she was not present at the notary public when the statement was notarized. (¶ 43).

The Investigation File spans nearly 90 pages and includes statements from seven teammates at Store 1100, contemporaneous notes from Romero's interviews, and email correspondence with teammates and Perez regarding the findings. (¶ 44; *see also* SOF Exs. 12-A and 12-B, Investigation File). The investigation into Towers' behavior resulted in findings that Towers was frequently verbally abusive to fellow teammates, forced one teammate to provide a false statement, attempted to interfere with the investigation into his complaint despite explicit instructions not to discuss the investigation while it was ongoing, and committed time keeping fraud by failing to clock out when he attended a football game with his manager, Poppleton. (SOF ¶ 45).

After the investigation was complete, Romero and Perez concluded that Towers had committed several violations of the Code of Conduct (SOF ¶ 48). Defendants made the recommendation to terminate Towers based on evidence gathered during the investigation into his conduct. (SOF ¶ 49). Defendants terminated Towers from his position on November 14, 2018. (SOF ¶ 50).

Towers filed his Complaint in this case on May 1, 2020, asserting two counts under Title VII. (Dkt. 1). Count I alleges sexual harassment in violation of Title VII, based on Defendants' failure to remedy or prevent Towers' alleged harassment by a female co-worker after learning of her inappropriate behavior (Compl. ¶¶ 26-27). Count II for retaliatory discharge alleges that Defendants unlawfully terminated Towers' employment in retaliation for raising his complaint

against the female co-worker (Compl. ¶¶ 21-24). Defendants moved for summary judgment on July 26, 2021, following the close of fact discovery (Dkt. 35).

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sorensen v. WD-40 Co.,* 792 F.3d 712, 722 (7th Cir. 2015). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. The Court "limit[s] its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment.

## DISCUSSION

### I.     Count I: Sexual Harassment

To prevail on his Title VII claim of sexual harassment, Towers must show that (1) he endured unwelcome sexual harassment; (2) he was harassed because of his sex; (3) the harassment

was so severe or pervasive as to create a hostile work environment; and (4) there is a basis for employer liability. *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). If the alleged harassment was at the hands of a coworker, as here, the employer is liable only if the employer was negligent in either discovering or remedying the harassment. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017); *Longstreet v. Illinois Dept. of Corr.*, 276 F.3d 379, 381 (7th Cir. 2002).

An employer is negligent in remedying harassment if it "failed to take prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 898 (7th Cir. 2016). The undisputed facts here show that Defendants were not negligent in taking corrective action. After Towers made a complaint to his store manager Mike Poppleton, Poppleton notified district manager Ray Perez. (SOF ¶¶ 20-22). Perez promptly conducted interviews of all Store 1100 teammates over the course of two weeks, from September 29, 2018, until October 10, 2018, concerning Towers' claim of harassment. (*Id.* ¶ 23). Towers did not make a formal complaint until October 15, 2018. When he did, Perez immediately advised Defendants' human resources department of the allegation. A human resources specialist, Rosibel Romero, began an investigation into the allegation and spoke to Towers that same day. (*Id.* ¶¶ 25-26, 33). Within a few days Romero had also spoken to the teammate accused of harassment. (*Id.* ¶ 28). The Investigative File is close to 90 pages long and contains the notes and interviews with seven employees. This reflects prompt effort by Defendants to investigate Towers' claim. *Porter v. Erie Foods Int'l Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (finding that a reasonable trier of fact could not conclude that the Defendant was negligent in remedying harassment where the facts showed promptness in instituting an investigation, conducting interviews with other employees, and meeting with the Plaintiff about his complaint). In addition, Defendants' investigation concluded that Towers was in a consensual relationship with

the employee he accused of sexual harassment and there is no evidence of further alleged harassment after the investigation. For Defendants to be liable, Towers needed to put forth sufficient facts to establish Defendants were negligent because they failed to take prompt and corrective action to remedy Towers' alleged harassment. Towers failed to refute any of the facts in spite of being given five months to do so. Absent disputed facts and considering the evidence that Defendants were prompt and reasonable in their investigation, Defendants are not liable for Towers' sexual harassment claim. Defendants are granted summary judgment on Count I.

## II.     Count II: Retaliation

Title VII prohibits retaliation against employees who engage in statutorily protected activity. To survive summary judgment on a retaliation claim, a plaintiff must offer evidence of "'(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007)), *aff'd*, 553 U.S. 442 (2008).  There is no dispute that Towers' complaint of sexual harassment is a protected activity, nor is there a dispute that termination is a materially adverse employment action.  The issue is whether there was a causal connection between Towers' complaint and Defendants' decision to terminate his employment.

A causal connection between the protected act and the adverse employment action exists when the evidence is sufficient "to permit a reasonable fact finder to conclude that retaliatory motive caused the [action]." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Where there is no direct evidence of retaliation (as here), circumstantial evidence that retaliatory motive exists can include "suspicious timing, ambiguous statements, ... other bits and pieces from which an inference of [retaliatory] intent might be drawn, [and] evidence, but not

necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 869 (7th Cir. 2013) (internal quotations and citations omitted).

There is no direct evidence in the record of a causal link between Towers' complaint and his termination. Therefore, the Court looks to circumstantial evidence. Towers' termination came on November 14, 2018—within a month of his sexual harassment complaint. And the investigation into Towers' behavior came about because of the sexual harassment complaint. (SOF ¶ 34; *see also* SOF Ex. 12A at TCC 1). Suspicious timing is one factor identified in *Lambert*, but alone does not create a triable issue of fact. *Gracia v. SigmaTron International, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) (noting that "suspicious timing alone is rarely enough to create an inference of retaliatory motive"). There is no other evidence of a causal link required to make out a prima facie case for retaliation. *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019) (the question is not whether the underlying protected activity was "*a* but-for cause of the adverse action, rather whether the protected activity was *the* but-for cause of the adverse action.") (emphasis in original). Towers has not provided any evidence that the protected activity, his complaint against his coworker, was *the* but-for cause, not just *a* but-for cause, of his termination.

Defendants have certain policies and procedures in place for employees, and Towers had previously confirmed receipt of those policies. (SOF Ex. 8). The "Policy Acknowledgement Status Report" shows that Towers acknowledged receipt of Defendants' Code of Conduct, Handbook, and Harassment, Discrimination and Retaliation Policy on June 26, 2018, shortly after he was hired at Store 1100. Violations of those policies can result in termination. *See, e.g.,* Dkt. 37, SOF Ex. 9 (Handbook stating that Defendants will investigate violations and take corrective action up to and including termination). The undisputed facts show that Defendants investigated reports that

10

Towers violated company policies, including that Towers used inappropriate language, left work without clocking out, intimidated coworkers into buying him meals, and when they complained coerced them into recanting those complaints and filed false notarized documents to cover up the recantation. While Towers' actions came to light while Defendants were interviewing coworkers about his sexual harassment complaint, that behavior—which Towers was aware was punishable by termination per the Handbook—took place *before* the complaint was filed. Then, during the investigation, coworkers reported that Towers continued to negatively impact the workplace by coercing a coworker to recant her previous statement about Towers' behavior. The evidence thus supports that it was Towers' own conduct, not the protected activity, that was *the* but-for cause of termination.

Even if Towers had established a prima facie case for retaliatory discharge, Defendants have offered a legitimate, non-discriminatory purpose for his termination. Specifically, as described above, Defendants have offered evidence that Towers was terminated for multiple violations of the Code of Conduct that were uncovered into an investigation into his conduct. Those violations included time keeping fraud, verbal abuse to coworkers, and coercing a teammate into making a false statement.

Because Defendants have offered a non-discriminatory reason for termination, the burden shifts to Towers to prove the reason given by Defendants is pretextual. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Tibbs* v. *Admin. Office of the Ill. Courts.*, 860 F.3d 502, 506 (7th Cir. 2017). Nothing in the record establishes a genuine dispute of material fact on the issue of pretext. While Towers' complaint alleges that Defendants' "stated reason for terminating Towers' employment was

11

pretextual," (Compl. at ¶ 12), Defendants have stated that Towers was terminated for his own conduct, and Towers has done nothing to meet his burden to show pretext. *Robertson v. Dep't of Health Servs.,* 949 F.3d 371, 378 (7th Cir. 2020) ("In determining whether the employer's reason can be characterized as pretextual, we do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief.") Defendants are granted summary judgment on Count II.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [35] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: February 10, 2022